## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ST. TAMMANY PARISH HOSPITAL**
**SERVICE DISTRICT NO. 2,**
      **Plaintiff**

**VERSUS**

**ZURICH AMERICAN INSURANCE**
**COMPANY, ET AL.,**
      **Defendants**

**CIVIL ACTION**

**NO.  21-2204**

**SECTION: "E"(3)**

## ORDER AND REASONS

Before the Court is a motion to remand[1] filed by Plaintiff, St. Tammany Parish Hospital Service District No. 2 d/b/a Slidell Memorial Hospital ("Plaintiff"). Defendants Zurich American Insurance Company and XL Insurance America, Inc. ("Defendants") filed an opposition.[2] Plaintiff did not file a reply.

## BACKGROUND

Plaintiff alleges it provides a comprehensive healthcare delivery system in Slidell, Louisiana.[3] The healthcare system includes a 223-bed acute care hospital and emergency room, a Level III neonatal intensive care unit, a heart center, a regional cancer center, and a physicians' network which includes outpatient rehabilitation therapists.[4] Plaintiff alleges it treats over 100,000 patients each year and employs more than 1,200 persons, including 32 physicians.[5]

---

[1] R. Doc. 11.
[2] R. Doc. 13.
[3] R. Doc. 1-2 at p. 4, ¶ 5.
[4] *Id.*
[5] *Id.* at ¶ 6.

1

As a result of COVID-19 and governmental measures taken at both the federal and state levels, Plaintiff alleges it has suffered substantial financial losses.[6] Plaintiff alleges it suffered direct physical loss of property and damage to its property in at least four ways:

> 1) through the certain or virtually certain presence of COVID-19 and/or the Coronavirus throughout its network of hospitals, primary and specialty physician practices and other complementary services, in the air or on surfaces (whether droplets, aerosols, or otherwise);
>
> 2) through state, local and agency governmental orders that drastically limited [Plaintiff's] use of its property (including, but not limited to, the prohibition of non-emergent and elective medical care procedures), and at various points shut down or drastically limited the operations of its facilities, causing [Plaintiff] to lose the total or partial normal use and function of its property;
>
> 3) through the need to modify physical behaviors through the use of social distancing, avoiding confined indoor spaces, and avoiding congregating in the same physical area as others, in order to reduce or minimize the potential for viral transmission; and
>
> 4) through the need to mitigate the threat or actual physical presence of the Coronavirus on door handles, bedsheets, hospital gowns, bed railings, medical equipment, miscellaneous surfaces, in heating and air conditioning systems, and in or on any of the multitude of other places the Coronavirus has been or could be found.[7]

Plaintiff alleges it incurred considerable expenses implementing reasonable and necessary safety and mitigation measures to protect its facilities, employees, patients, and their families from the spread of COVID-19, and to mitigate its losses as a result of COVID-19.[8] Plaintiff further alleges the losses it suffered and expenses it incurred are covered as "EXTRA EXPENSE" under the insurance policies provided by Defendants.[9]

Plaintiff alleges "[a]s a result of the substantial losses connected to the physical loss of and/or damage to its facilities, expenses incurred in the decontamination of its

---

[6] *Id.* at ¶ 8.
[7] *Id.* at p. 5, ¶ 9.
[8] *Id.* at pp. 5–6, ¶¶ 10-13.
[9] *Id.* at p. 6, ¶ 13.

facilities, enhanced measures, and [other actions taken]," Plaintiff filed claims with Defendants as its "commercial property and business interruption insurers," under the "all risk Zurich Healthcare Edge" policies Defendants issued to Plaintiff, each policy having an effective coverage term of April 16, 2019 to April 16, 2020.[10] Plaintiff further alleges Defendants summarily dismissed its claims under the policies, citing an exclusion, without proper investigation.[11] Plaintiff alleges Defendants wrongfully refused to provide coverage for its losses, which allegedly exceed $18,000,000.00.[12]

Plaintiff filed suit against Defendants on or about October 1, 2021, in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.[13] In the state court petition, Plaintiff summarizes the nature of this lawsuit as follows:

> This is an insurance coverage action for declaratory judgment and breach of contract arising from the refusal of [Defendants] to provide coverage to [Plaintiff] under a comprehensive loss policy issued by the Defendants called "The Zurich Edge Healthcare Policy": a unique policy targeting healthcare facilities with the marketing promise of "higher limits, broader coverage and greater flexibility" and which expressly provides coverage for the losses [Plaintiff] sustained as a result of COVID-19.[14]

Plaintiff seeks damages for breach of contract and seeks a judgment declaring the scope of Defendants' obligations to pay Plaintiff's losses under the subject policies.[15] Plaintiff also seeks to recover damages, statutory penalties, and attorney fees under Louisiana Revised statutes §§ 22:1892 and 22:1973.[16]

---

[10] *Id.* at pp. 7–8, ¶ 17.
[11] *Id.* at p. 8, ¶ 22.
[12] *Id.* at pp. 20–21, ¶¶ 73–74.
[13] R. Doc. 1-2 at p. 3 *et seq.* The state court action is styled *St. Tammany Parish Hospital Service District No. 2 d/b/a Slidell Memorial Hospital v. Zurich American Insurance Co. and XL Insurance America, Inc.,* Case No. 2021-14180 I, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.
[14] R. Doc. 1-2 at p. 4, ¶ 4.
[15] R. Doc. 1-2 at p. 22, ¶¶ 80–81.
[16] *Id.* at pp. 42–43, ¶¶ 168–76.

On December 1, 2021, Defendants filed a Notice of Removal, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.[17] On December 16, 2021, Plaintiff filed a motion to remand to state court, arguing complete diversity is lacking because Plaintiff is an arm of the state and that "[a]s a matter of law, an arm of the state has no citizenship and cannot be removed to federal court under 28 U.S.C. §1332(a)."[18] Plaintiff further argues hospital service districts such as Plaintiff are alter egos or arms of the state "such that they are immune from suit in federal court pursuant to the Eleventh Amendment."[19]

## LEGAL STANDARD

Federal courts are courts of limited subject matter jurisdiction, and they possess only the power authorized by the Constitution and by statute.[20] Under 28 U.S.C. § 1441, a defendant may remove an action from state court to federal court if the plaintiff could have originally brought the action in federal court.[21] Pursuant to 28 U.S.C. § 1332, a federal court may exercise subject matter jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs," and where there is complete diversity of citizenship.[22] The parties are completely diverse when no plaintiff is a "citizen of the same State as any defendant."[23]

## LAW AND ANALYSIS

In the Notice of Removal, Defendants invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332(a).[24] Defendants argue diversity jurisdiction exists because the

---

[17] R. Doc. 1 at pp. 1–2.
[18] R. Doc. 11 at p. 2.
[19] *Id.*
[20] *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[21] *See* 28 U.S.C. § 1441.
[22] *See* 28 U.S.C. § 1332(a).
[23] *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).
[24] R. Doc. 1.

parties are completely diverse, and Plaintiff's petition alleges losses in excess of $18,000,000.[25] Defendants further assert removal is proper because all Defendants named in this action have joined in the filing of the Notice of Removal.[26] Defendants further assert they each were served through the Louisiana Secretary of State on November 2, 2021, and the Notice of Removal was timely filed within 30 days after service on December 1, 2021.[27]

With respect to complete diversity, Defendants assert Defendant Zurich is a citizen of New York and Illinois, as it is incorporated under the laws of New York and has its principal place of business in Schaumburg, Illinois.[28] Defendants assert Defendant XL Insurance is a citizen of Delaware and Connecticut, as it is incorporated under the laws of Delaware and has its principal place of business in Stamford, Connecticut.[29] Defendants assert Plaintiff, as a political subdivision of the State of Louisiana, is a citizen of Louisiana for diversity jurisdiction purposes.[30]

In its motion to remand, Plaintiff argues complete diversity is lacking because the parties are not citizens of different states under § 1332.[31] Plaintiff argues it is not a citizen of Louisiana for purposes of diversity jurisdiction,[32] contending "it is well-established that a state, and the arms or alter egos of the state, are not 'citizens' for purposes of diversity jurisdiction."[33] Plaintiff argues it has no state citizenship for purposes of diversity jurisdiction because of its status as a political subdivision of a state.[34] Plaintiff further

---

[25] *See* R. Doc. 1.
[26] *Id.* at ¶ 13.
[27] *Id.* at ¶ 12.
[28] R. Doc. 1 at ¶ 3.
[29] *Id.* at ¶ 4.
[30] *Id.* at ¶ 2.
[31] R. Doc. 11-1 at p. 3.
[32] *Id.* at p. 1.
[33] *Id.* at p. 3.
[34] *Id.*

5

argues as an arm of the state, it is immune from suit in federal court under the Eleventh Amendment to the United States Constitution.[35]

In the opposition to the motion to remand, Defendants argue complete diversity, and federal subject matter jurisdiction exist because Plaintiff is a citizen of the State of Louisiana and is not an arm or alter ego of the State of Louisiana.[36]

The Eleventh Amendment does not apply to this action. Even assuming arguendo that Plaintiff is an arm of the state entitled to invoke the Eleventh Amendment immunity afforded to the State of Louisiana, that immunity would avail Plaintiff of nothing in this case, as no claims are brought *against* Plaintiff. The Eleventh Amendment does not apply when, as in this case, the state entity is the party bringing the claims, rather than the party being sued.[37] However, even if the Eleventh Amendment could be construed to bar removal of a suit instituted by an arm of the state in state court, the Court concludes below that Plaintiff is not entitled to invoke the Eleventh Amendment immunity of the State of Louisiana because Plaintiff is not an arm or alter ego of the State of Louisiana.

Plaintiff acknowledges it is a political subdivision of the State of Louisiana, as the state court petition contains the allegation that Plaintiff is a "political subdivision of the State of Louisiana."[38] Louisiana's statutes and case law support the conclusion that hospital service districts such as Plaintiff are political subdivisions.

---

[35] *Id.* at pp. 3–4.

[36] R. Doc. 13 at p. 8.

[37] *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 1989 U.S. Dist. LEXIS 13703, *1-2 ("The Eleventh Amendment prohibits suits in federal court 'commenced or prosecuted against one of the United States.' This amendment was enacted to protect states against federal judgments requiring payment of money which would interfere with states' fiscal autonomy and political sovereignty. Jagnandan v. Giles, 538 F.2d 1166 (5th Cir. 1976), cert den., 432 U.S. 910, 97 S.Ct. 2959 (1977). We are aware of no case holding that the Eleventh Amendment prevents removal of a suit filed by a state as a plaintiff. We conclude that the Eleventh Amendment is inapplicable.")

[38] R. Doc. 1-2 at p. 3.

St. Tammany Parish Hospital Service District No. 2 is created by state statute.

Louisiana Revised Statutes section 46:1098.1, provides, in pertinent part, as follows:

> A. There is hereby created a hospital service district in St. Tammany Parish, hereafter to be termed the St. Tammany Parish Hospital Service District No. 2, a political subdivision of the state, referred to in this Part as the "district". The district is hereby granted all of the rights, powers, privileges, and immunities accorded by law and the Constitution of Louisiana to political subdivisions of the state, subject to the limitations provided in this Part.
>
> B. The district shall be comprised of all territory within Wards 6, 7, 8, and 9 of St. Tammany Parish and shall own and operate the Slidell Memorial Hospital.[39]

Louisiana Revised States section 46:1064 states "[t]he hospital service districts as defined in R.S. 46:1072 are hereby declared to be political subdivisions of the state."[40] Section 46:1072 defines a hospital service district as a "political subdivision of the state of Louisiana organized pursuant to an Act of the Legislature of Louisiana."[41]

The Louisiana Supreme Court characterizes hospital service districts as political subdivisions, and not as arms of the state.[42] The Louisiana Supreme Court has stated that

> [b]y this legislation [La. R.S. §§ 46:1051–1069.1], hospital service districts thus created are declared to be political subdivisions of the State and to constitute a body corporate in law with all powers of a corporation with perpetual existence. The power is granted to incur debt and contract obligations and to do and perform any and all acts necessary and proper for carrying out the purposes for which the hospital service district is created. The districts are, moreover, empowered to do such things and enter into contracts with any state instrumentality to procure aid and grants necessary to assist the districts in carrying out the purposes for which they are created.[43]

The Court now turns to the question of whether Plaintiff, a political subdivision of the State of Louisiana, is a citizen of Louisiana for purposes of diversity jurisdiction. "[A]

---

[39] La. Stat. § 46:1098.1.(A)–(B).
[40] La. Stat. § 46:1064.
[41] La. Stat. § 46:1072.
[42] *See Bertrand v. Sandoz*, 255 So. 2d 754 (1971).
[43] *Id.* at 756.

State is not a 'citizen' for purposes of the diversity jurisdiction."[44] However, as the United States Supreme Court has expressly recognized, "a political subdivision of a State, unless it is simply the arm or alter ego of the State, is a citizen of the State for diversity purposes."[45] Unless Plaintiff is an arm or alter ego of the State of Louisiana, the Court has subject matter jurisdiction under 28 U.S.C. § 1332. The Court must determine whether Plaintiff is an arm or alter ego of the State of Louisiana.

"The analysis of whether a political body is a citizen for purposes of diversity jurisdiction is the same as the analysis used to determine if a political body enjoys 11th Amendment immunity"[46] based on it being an arm or alter ego of the state.[47] The Fifth Circuit has taken a "case-by-case approach to determining whether a state is the real party in interest in suits brought against entities which appear to be" alter egos or arms of the state.[48] The Fifth Circuit has applied the following six-factors to determine whether an entity is an arm of the state:

> (1) Whether the state statutes and case law characterize the agency as an arm of the state
> (2) The source of funds for the entity
> (3) The degree of local autonomy the entity enjoys
> (4) Whether the entity is concerned primarily with local, as opposed to state-wide, problems
> (5) Whether the entity has authority to sue and be sued in its own name and
> (6) Whether the entity has the right to use and hold property.[49]

---

[44] *Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973).

[45] *Id.*

[46] *Sw. Louisiana Convention & Visitors Bureau v. Emps. Mut. Cas. Co.*, No. 2:06 CV 2006, 2007 WL 2228368, at *1 (W.D. La. June 25, 2007), report and recommendation adopted, No. 2:06 CV 2006, 2007 WL 9706278 (W.D. La. July 31, 2007) (citing *Tradigrain v. Mississippi State Port Authority*, 701 F.2d 1131, 1132 (5th Cir. 1983)).

[47] *See Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (stating that "the analysis of an agency's status is virtually identical whether the case involves a determination of immunity under the eleventh amendment or a determination of citizenship for diversity jurisdiction.")

[48] *Richardson*, 118 F.3d at 452.

[49] *Delahoussaye*, 937 F.2d at 147 (citing *Minton v. St Bernard Parish School Bd.*, 803 F.2d 129, 131 (5th Cir. 1986) and *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986)).

8

These factors, listed in *Delahoussaye,* were first enumerated by the Fifth Circuit in *Clark v. Tarrant County* and are frequently referred to as the *Clark* factors.[50] Not all of these factors are given the same weight, and it is not required that each factor be met before an entity can be considered an arm of the state.[51] The second factor is the most important because "an important goal of the Eleventh Amendment is the protection of state treasuries."[52] Courts "typically deal with the last two factors in a fairly brief fashion."[53] These factors help the courts "balance the equities and determine as a general matter 'whether the suit is in reality a suit against the state itself.'"[54] The Court will now apply the six *Clark* factors to determine whether St. Tammany Parish Hospital Service District No. 2 is an alter ego of the State of Louisiana.

(1) Whether state law characterizes the agency as an arm of the state:

At the outset, the Court notes the Fifth Circuit has suggested that political subdivisions of a state and alter egos of a state are mutually exclusive categories.[55] After conceding that the mutual exclusivity of these categories is not a hard and fast rule, the Fifth Circuit went on to state that every "government entity classified as a political subdivision has been denied Eleventh Amendment immunity, perhaps because political subdivisions are more local in character."[56]

The Fifth Circuit has stated, "[i]n every recent case in which a Louisiana political entity has been held to be an 'arm of the state,' the state agency being sued was part of a

---

[50] *See Clark*, 798 F.2d at 744–45; *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).
[51] *Hudson v. City of New Orleans*, 174 F.3d 677, 681–82 (5th Cir. 1999).
[52] *Delahoussaye*, 937 F.2d at 147–48; *see also Hudson*, 174 F.3d at 682.
[53] *Hudson*, 174 F.3d at 682.
[54] *Id.* (quoting *Laje v. R.E. Thomason General Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).
[55] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (recognizing that the Fifth Circuit's prior decision in *Cozzo v. Tangipahoa Parish Council–President Govt.*, 279 F.3d 273, 281–82 (5th Cir. 2002) suggests that political subdivision and arm of the state are mutually exclusive.)
[56] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002).

department within the executive branch."[57] The fact that hospital service districts are not part of a department within the executive branch of Louisiana's government suggests Louisiana would not view Plaintiff as an arm of the state.[58]

Because the Louisiana statutes and case law classify hospital service districts as "'political subdivisions' which are usually local governmental units with no connection to the executive branch of government, the first factor points against" finding that St. Tammany Parish Hospital Service District No. 2 is an arm of the state.[59]

(2) Source of Funds

The source of funding factor encompasses two inquiries: first, whether the entity under scrutiny receives funds from the state, and, even more importantly, whether money damages assessed against the entity are paid from the state treasury.[60]

With regard to the general question of the hospital service district's budget, St. Tammany Parish Hospital Service District No. 2 does not represent that it receives funds from the state. Instead, St. Tammany Parish Hospital Service District No. 2 is largely self-supported and has independent ability to generate revenue. The Board of St. Tammany Parish Hospital Service District No. 2 possesses "the power to issue bonds for the purpose of constructing, acquiring, extending, and improving healthcare facilities" subject to the approval of the State Bond Commission.[61] In addition, the board possesses authority to "borrow money and to issue general obligation bonds, revenue bonds, notes, certificates, or other evidences of indebtedness of the district in order to accomplish any of its objects

---

[57] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (citations omitted).
[58] *Id.* (stating that "political subdivisions are not part of any department within the executive branch of government.")
[59] *Id.*
[60] *Richardson v. S. Univ*, 118 F.3d 450, 456 (5th Cir. 1997).
[61] La. Stat. § 46:1098.14.

and purposes."[62] In addition, "for the purpose of providing revenue to carry out the objects contemplated hereby, the board may levy and collect annually a special tax not to exceed five mills on all property in the district subject to such tax."[63] Where, as here "a state creates subdivisions and imbues them with a significant measure of autonomy, such as the ability to levy taxes, issue bonds, or own land in their own name, these subdivisions are too separate from the State to be considered its 'arms.' This is so even though these political subdivisions exist solely at the whim and behest of their State."[64]

With regard to the question of the State of Louisiana's liability for money judgments rendered against St. Tammany Parish Hospital Service District No. 2, Plaintiff concedes that it is "solely responsible for its obligations, debts, and liabilities."[65] Thus, money damages assessed against Plaintiff are not paid from the state treasury. "Because an important goal of the Eleventh Amendment is the protection of state treasuries, the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds."[66] Thus, the second factor weighs heavily against concluding that Plaintiff is an arm of the state of Louisiana.

(3) The degree of local autonomy the entity enjoys:

St. Tammany Parish Hospital Service District No. 2 is subject to at least some oversight. As previously mentioned, any bonds issued by St. Tammany Parish Hospital Service District No. 2 must be approved by the State Bond Commission. St. Tammany Parish Hospital Service District No. 2 is also subject to an annual legislative audit.[67]

---

[62] La. Stat. § 46:1098.7.
[63] La. Stat.§ 46:1098.13.
[64] *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 313 (1990) (Brennan, J., concurring in part).
[65] R. Doc. 11-1 at p. 9.
[66] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991).
[67] La. Stat. § 46:1098.1.

The Fifth Circuit has explained that "the determination of an agency's autonomy requires analysis of the extent of the [entity's] independent management authority."[68] St. Tammany Parish Hospital Service District NO. 2 has a significant amount of autonomy over its day-to-day functions and possesses a broad extent of independent management authority. For example, St. Tammany Parish Hospital Service District No. 2 "may establish by resolution any healthcare facility as a profit or nonprofit corporation as defined by law,"[69] and shall

> constitute a body corporate in law with all the powers of a corporation; shall have perpetual existence; and shall have the power and right to incur debts and contract obligations, to sue and be sued, and to do and perform any and all acts in its corporate capacity and its corporate name necessary and proper for the carrying out of the objects and purposes for which the district was created. The district shall have the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a hospital service district and may acquire by donation or purchase, any existing hospital facility in the district. It shall also have the power and authority to acquire any and all necessary equipment and buildings for the purpose of performing the objects for which it is formed, and shall own all sites and physical facilities, which are acquired either by donation, purchase, expropriation, exchange, or otherwise, in full ownership.[70]

In addition, § 46:1098.7 states the district, by and through its board, shall have and exercise all rights, powers, and duties for the carrying out of its objects and purposes, which includes "any and all things except as limited by the Constitution of Louisiana which are necessary for and to the advantage of healthcare facilities, including but not limited to the extension of privileges and use of healthcare facilities to persons residing outside the district."[71]

---

[68] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 694 (5th Cir. 2002).
[69] La. Stat. § 46:1098.1.
[70] *Id.*
[71] *Id.* § 46:1098.7.

The Fifth Circuit has explained that residency requirements and local nominations weigh in favor of finding significant local autonomy.[72] In this case, state statutes seat the domicile of the hospital service district's board in Slidell, Louisiana,[73] and the members of the board must be residents and domiciliaries of St. Tammany Parish.[74] In addition, the members of the Board shall be appointed by an "appointing authority" and the seven members of the appointing authority must all be residents of St. Tammany Parish.[75]

(4) Whether the entity is primarily concerned with local, as opposed to statewide, problems:

The purposes of St. Tammany Parish Hospital Service District No. 2 are set forth in its creating statute[76] as follows: to own and operate hospitals and to administer other activities related to the care of the sick and injured; to conduct scientific research and training related to the care of the sick and injured; to participate in activity designed to promote the general health of the community; and to cooperate with other institutions providing hospital and health services within the district.[77] Importantly, when these purposes are considered in their proper statutory context—within Title 46, Chapter 10, Part VI, titled "St. Tammany Parish Hospital Service District No. 2"—it is clear these purposes are of an entirely local character. Further bolstering this conclusion, the statutory objectives of St. Tammany Parish Hospital Service District No. 2 are, inter alia, to "represent the public interest in providing medical care in the *parish*" and to "advise the *parish* governing authority" concerning problems in the operation of district

---

[72] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 695 (5th Cir. 2002).
[73] *Id*. § 46:1098.2
[74] *Id*.
[75] *Id*. § 46:1098.5.
[76] *See* La. Stat. § 46:1098.1.
[77] *Id*.

13

facilities.[78] Moreover, § 46:1098.15 expressly states that "Slidell Memorial Hospital and the district shall otherwise cooperate in all respects possible for the best interests of the *citizens of St. Tammany Parish.*"[79] Thus, the geographic reach of St. Tammany Parish Hospital Service District No. 2's powers and objectives are circumscribed to St. Tammany Parish.

Plaintiff is a hospital service district in St, Tammany Parish Louisiana, with the district compromising "all territory within Wards 6, 7, 8, and 9 of St. Tammany Parish."[80] The Fifth Circuit has explained that "[limited territorial boundaries suggest that an agency is not an arm of the state."[81] As noted above, the domicile of the hospital service district's board is in Slidell, Louisiana,[82] and the members of the board must be residents and domiciliaries of St. Tammany Parish.[83]

<u>(5) and (6) Whether the entity has the right to sue and be sued in its own name, and whether the entity has the right to hold and use property:</u>

As previously mentioned, St. Tammany Parish Hospital Service District No. 2 has the right to sue and be sued in its own name, and the right to hold, transfer, acquire, and use property.[84]

The Court finds that each of the six *Clark* factors points inexorably to the conclusion that Plaintiff is not an arm of the State of Louisiana. As a political subdivision that is not an arm of the state, it is a citizen of the State of Louisiana. Because neither Defendant is a citizen of the State of Louisiana, complete diversity exists in this case.

---

[78] *Id.* § 46:1098.7 (emphasis added).
[79] *Id.* § 46:1098.15 (emphasis added).
[80] *Id.*
[81] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 695 (5th Cir. 2002).
[82] *Id.* § 46:1098.2
[83] *Id.*
[84] *Id.* § 46:1098.1.

Accordingly, the Court concludes it has subject matter jurisdiction over this action under 28 U.S.C. § 1332.

## <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff St. Tammany Parish Hospital Service District No. 2's motion to remand[85] is **DENIED.**

**New Orleans, Louisiana, this 14th day of March 2022.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[85] R. Doc. 11.

15