## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ST. TAMMANY PARISH HOSPITAL**
**SERVICE DISTRICT NO. 2,**
    **Plaintiff**

**VERSUS**

**ZURICH AMERICAN INSURANCE**
**COMPANY, ET AL.,**
    **Defendants**

**CIVIL ACTION**

**NO.  21-2204**

**SECTION: "E"(3)**

## ORDER AND REASONS

Before the Court is a motion to dismiss,[1] filed by Defendants Zurich American Insurance Company and XL Insurance America, Inc. ("Defendants"). Plaintiff, St. Tammany Parish Hospital Service District No. 2 d/b/a Slidell Memorial Hospital ("Plaintiff") filed an opposition.[2] Defendants filed a reply.[3]

## BACKGROUND

Three Zurich Edge Healthcare commercial insurance policies were issued to Plaintiff by the Defendants: (1) Policy No. ZMD0115336-04, issued by Zurich American Insurance Company, with an effective coverage term of April 26, 2019 to April 26, 2020;[4] (2) Policy No. US00090865PR19A issued by XL Insurance America, Inc., with an effective coverage term of April 26, 2019 to April 26, 2020;[5] and (3) Policy No. ZMD0115336-05, issued by Zurich American Insurance Company, with an effective coverage term of April 26, 2020 to April 26, 2021.[6] Plaintiff has made claims against the

---

[1] R. Doc. 6.
[2] R. Doc. 17.
[3] R. Doc. 22.
[4] R. Doc. 6-3.
[5] R. Doc. 6-4.
[6] R. Doc. 6-5.

1

Defendants under all three policies. The parties agree all the relevant provisions under the policies are identical.[7] Hereinafter, the Court will refer to the policies collectively as the "Policy."

This matter arises from a dispute regarding coverage under the Policy for losses caused by the COVID-19 pandemic and related governmental orders aimed at mitigating the spread of the Coronavirus. Plaintiff seeks coverage under two sections of the Policy, to wit: under the 'Time Element' section of the Policy, for business interruption and extra expenses;[8] and under several provisions of the 'Special Coverages' section of the Policy, namely, civil or military authority coverage, contingent time element coverage, protection and preservation of property coverage, decontamination costs coverage, ingress/egress coverage, and interruption by communicable disease coverage.[9]

Plaintiff alleges it provides a comprehensive healthcare delivery system in Slidell, Louisiana.[10] The healthcare system includes a 223-bed acute care hospital and emergency room, a Level III neonatal intensive care unit, a heart center, a regional cancer center, and a physicians' network which includes outpatient rehabilitation therapists.[11] Plaintiff alleges it treats over 100,000 patients each year and employs more than 1,200 persons, including 32 physicians.[12]

---

[7] *See* R. Doc. 6-2 at p. 12 ("The policies use identical substantive wordings."); *see also* R. Doc. 17 at p. 5 ("These three policies all contain the same terms and provisions.")
[8] R. Doc. 1-2 at pp. 19–20.
[9] R. Doc. 1-2 at pp. 31–35.
[10] R. Doc. 1-2 at p. 4, ¶ 5.
[11] *Id.*
[12] *Id.* at ¶ 6.

Plaintiff alleges, as a result of COVID-19 and governmental measures taken at both the federal and state levels, it has suffered substantial financial losses.[13] Plaintiff alleges it suffered direct physical loss of property and damage to its property in at least four ways:

> 1) through the certain or virtually certain presence of COVID-19 and/or the Coronavirus throughout its network of hospitals, primary and specialty physician practices and other complementary services, in the air or on surfaces (whether droplets, aerosols, or otherwise);

> 2) through state, local and agency governmental orders that drastically limited [Plaintiff's] use of its property (including, but not limited to, the prohibition of non-emergent and elective medical care procedures), and at various points shut down or drastically limited the operations of its facilities, causing [Plaintiff] to lose the total or partial normal use and function of its property;

> 3) through the need to modify physical behaviors through the use of social distancing, avoiding confined indoor spaces, and avoiding congregating in the same physical area as others, in order to reduce or minimize the potential for viral transmission; and

> 4) through the need to mitigate the threat or actual physical presence of the Coronavirus on door handles, bedsheets, hospital gowns, bed railings, medical equipment, miscellaneous surfaces, in heating and air conditioning systems, and in or on any of the multitude of other places the Coronavirus has been or could be found.[14]

Plaintiff alleges the presence of the virus in the air and on surfaces made its facilities unsafe and unfit for their intended uses.[15] Plaintiff alleges it incurred considerable expenses implementing reasonable and necessary safety and mitigation measures to protect its facilities, employees, patients, and their families from the spread of COVID-19, and to mitigate its losses as a result of COVID-19.[16]

---

[13] *Id.* at ¶ 8.
[14] *Id.* at p. 5, ¶ 9.
[15] *Id.* at p. 5, ¶ 10.
[16] *Id.* at pp. 5–6, ¶¶ 10-13.

Plaintiff alleges "[a]s a result of the substantial losses connected to the physical loss of and/or damage to its facilities, expenses incurred in the decontamination of its facilities, enhanced measures, and [other actions taken]," it filed claims with Defendants as its "commercial property and business interruption insurer."[17] Plaintiff alleges Defendants summarily dismissed its claims under the Policy, citing an exclusion, without proper investigation.[18] Plaintiff alleges Defendants wrongfully refused to provide coverage for its losses, which allegedly exceed $18,000,000.00.[19]

Plaintiff filed suit against Defendants on or about October 1, 2021, in the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.[20] In the state court petition, Plaintiff summarizes the nature of this lawsuit as follows:

> This is an insurance coverage action for declaratory judgment and breach of contract arising from the refusal of [Defendants] to provide coverage to [Plaintiff] under a comprehensive loss policy issued by the Defendants called "The Zurich Edge Healthcare Policy": a unique policy targeting healthcare facilities with the marketing promise of "higher limits, broader coverage and greater flexibility" and which expressly provides coverage for the losses [Plaintiff] sustained as a result of COVID-19.[21]

Plaintiff contends the Policy provides coverage for the alleged losses caused by COVID-19 and related governmental orders. Plaintiff seeks damages for breach of contract and seeks a judgment declaring the scope of Defendants' obligations to pay Plaintiff's losses under the Policy.[22] Plaintiff also seeks to recover damages, statutory penalties, and attorneys' fees under Louisiana Revised statutes §§ 22:1892 and 22:1973.[23]

---

[17] *Id.* at pp. 7–8, ¶ 17.
[18] *Id.* at p. 8, ¶ 22.
[19] *Id.* at pp. 20–21, ¶¶ 73–74.
[20] R. Doc. 1-2 at p. 3 *et seq.* The state court action is styled *St. Tammany Parish Hospital Service District No. 2 d/b/a Slidell Memorial Hospital v. Zurich American Insurance Co. and XL Insurance America, Inc.*, Case No. 2021-14180 I, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.
[21] R. Doc. 1-2 at p. 4, ¶ 4.
[22] *Id.* at p. 22, ¶¶ 80–81.
[23] *Id.* at pp. 42–43, ¶¶ 168–76.

4

On December 1, 2021, Defendants filed a Notice of Removal, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332.[24] On December 16, 2021, Plaintiff filed a motion to remand to state court.[25] On March 14, 2022, the Court denied Plaintiff's motion to remand, finding that subject matter jurisdiction exists under 28 U.S.C. § 1332.[26]

On December 8, 2021, Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff's state court petition fails to state a claim upon which relief can be granted.[27] On February 7, 2022, Plaintiff filed an opposition to Defendants' motion to dismiss.[28] On February 17, 2022, Defendants filed a reply memorandum in support of the motion to dismiss.[29]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief.[30] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] The court, however, does not accept as true legal conclusions or mere

---

[24] R. Doc. 1 at pp. 1–2.
[25] R. Doc. 11.
[26] R. Doc. 23.
[27] R. Doc. 6.
[28] R. Doc. 17.
[29] R. Doc. 22.
[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[32] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[33] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[34]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[35] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."[36] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[37]

## LAW AND ANALYSIS

In their motion to dismiss, Defendants argue the Policy does not cover the losses and expenses incurred by Plaintiff as a result of COVID-19 and related governmental orders aimed at curbing the spread of the Coronavirus.[38] Defendants argue the Policy, in general, insures against "direct physical loss of or damage caused by a Covered Cause of Loss to Property," and that the Policy defines a Covered Cause of Loss to Property as "all risks of direct physical loss of or damage from any cause unless excluded."[39] Defendants argue the coverage provisions of the policies "respond to physical loss of or damage to property."[40] Defendants further argue that "neither the Coronavirus nor pandemic-related orders cause 'direct physical loss of or damage to' property under a commercial

---

[33] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[34] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[35] *Twombly*, 550 U.S. at 555.
[36] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted).
[37] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam).
[38] *See* R. Doc. 6; R. Doc. 6-2.
[39] R. Doc. 6-2 at p. 12.
[40] R. Doc. 6-2 at p. 14 (emphasis in original).

property insurance policy."[41] Defendants argue the phrase "direct physical loss of or damage to" is unambiguous and plainly requires physical alteration of insured property.[42] Defendants further argue Plaintiff's claims fail because Plaintiff has not "plausibly alleged any tangible, demonstrable, physical alteration of property caused by the Coronavirus."[43] Defendants also argue Plaintiff is not entitled to coverage under the special Interruption by Communicable Disease coverage because orders issued by Louisiana's civil authorities did not prohibit access to any portion of the insured premises.[44] Finally, Defendants argue Plaintiff's bad faith claims under La. R.S. §§ 22:1973 and 22:1892 fail as a matter of law because the underlying, substantive claims for coverage fail.[45]

In its opposition, Plaintiff argues "dismissal is improper under *these* facts, under *these* Policy provisions, as interpreted under *Louisiana* law."[46] Plaintiff argues it experienced direct physical loss of or damage to its property through the presence of Coronavirus at its facilities, through governmental orders limiting the use of its property and reducing its operations, through the need to modify physical behaviors aimed at reducing or minimizing the potential for viral transmission, and through the need to mitigate the threat or actual physical presence of the Coronavirus on surfaces, in air conditioning systems, and in all other places that the Coronavirus may be found.[47] Plaintiff argues the Policy expressly provides coverage for loss or damage caused by a communicable disease.[48] Plaintiff further argues the Policy expressly acknowledges that

---

[41] *Id.*
[42] *Id.* at pp. 16–17.
[43] *Id.* at p. 17.
[44] *Id.* at p. 31.
[45] *Id.* at p. 32.
[46] R. Doc. 17 at p. 1 (emphasis in original).
[47] *Id.* at pp. 4–5.
[48] *Id.* at p. 7.

'loss or damage' may be caused by communicable disease.[49] Plaintiff argues that, because loss or damage caused by a communicable disease is a covered cause of loss, "such loss or damage caused by communicable disease necessarily triggers the other relevant coverages contained in the Policy including time element/extra expense, contingent time element, protection and preservation of property, and decontamination costs."[50]

Under Louisiana law, an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[51] Under Louisiana law, interpretation of an insurance contract is generally a matter of law.[52] "The role of the judiciary in interpreting an insurance contract is to ascertain the common intent of the insured and insurer as reflected by the words in the policy."[53] "Obviously, the initial determination of the parties' intent is found in the insurance policy itself."[54]

Words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.[55] "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written," and courts do not have the authority "to alter the terms of an insurance contract under the guise of contractual interpretation when the contract's provisions are couched in unambiguous terms."[56] "Ambiguous terms in an insurance contract are construed liberally in favor of

---

[49] *Id.*
[50] *Id.* at p. 8.
[51] *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003–1801 (La.2/25/04), 869 So.2d 96, 99.
[52] *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So. 2d 906, 910.
[53] *Peterson v. Schimek*, 98–1712, p. 4 (La.3/2/99), 729 So.2d 1024, 1028 (citing La. Civ. Code art. 2045).
[54] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01), 782 So. 2d 573" See La. Civ. Code art. 2046.
[55] *See* La. Civ. Code art. 2047; *see also Doerr*, 774 So.2d at 124.
[56] *Succession of Fannaly v. Lafayette Ins. Co.*, 2001-1355 (La. 1/15/02), 805 So. 2d 1134, 1137–38.

the person claiming coverage."[57] An ambiguity in an insurance policy exists when a provision or term in question can be reasonably construed in two different ways.[58] The question of whether an insurance contract is clear or ambiguous is a question of law.[59]

To recover on an insurance policy, an insured bears the burden of proving that its loss is covered by the policy.[60] If the insured meets this burden, the insurer then has the burden of proving the applicability of policy exclusions.[61]

The Policy issued to Plaintiff by Defendants is an all-risk commercial insurance policy under which coverage is generally triggered if there is "direct physical loss of or damage caused by a covered cause of loss to covered property."[62] As previously mentioned, Plaintiff seeks coverage under two distinct sections of the Policy, namely the Time Element section and the Special Coverages section.

The Time Element section of the Policy states that the insurer

> [w]ill pay for the actual time element loss the Insured sustained, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**.[63]

---

[57] *Capitol Anesthesia Grp., P.A. v. Watson*, 2008-1159 (La. App. 3 Cir. 3/4/09), 7 So. 3d 51, 54, *writ denied*, 2009-1088 (La. 9/18/09), 17 So. 3d 974 (citing *Westerfield v. LaFleur*, 493 So.2d 600 (La.1986)).

[58] *Id.* (citing *McCarthy v. Berman*, 95–1456 (La.02/28/96), 668 So.2d 721.)

[59] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580.

[60] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01), 782 So. 2d 573.

[61] *Id.*

[62] R. Doc. 6-3 at p. 19, ¶ 1.01.

[63] *Id.* at p. 30, ¶ 4.01.01 (emphasis in original).

9

Time Element Coverages include the Insured's gross earning losses[64] and its extra expenses.[65] The policies define suspension as the "slowdown or cessation of the insured's business activities."[66]

The relevant coverage provisions in the Policy's Special Coverages section include the civil or military authority provision, the contingent time element provision, the protection and preservation of property provision, the decontamination costs provision, the ingress/egress provision, and the interruption by communicable disease provision.[67] With the exception of coverage for interruption by communicable disease, each of the coverages identified by Plaintiff in its petition is triggered only by "direct physical loss of or damage to" property.  As a result, the first question before the Court is whether, under Louisiana law, the Coronavirus pandemic and related governmental lockdown orders trigger coverage under an all-risk commercial insurance policy providing coverage for "direct physical loss of or damage to property."

I.  **Plaintiff has no coverage under the Time Element or five of the Special Coverage provisions because it has not alleged it suffered a tangible, demonstrable, physical alteration to its property.**[68]

Defendants argue the Policy, in general, insures against "direct physical loss of or damage caused by a Covered Cause of Loss to Property," and that the Policy defines a Covered Cause of Loss to Property as "all risks of direct physical loss of or damage from any cause unless excluded."[69] Defendants further argue that "neither the Coronavirus nor pandemic-related orders cause 'direct physical loss of or damage to' property under a

---

[64] *Id.* at ¶ 4.02.01.
[65] *Id.* at p. 31, ¶ 4.02.03.
[66] R. Doc. 6-3 at p. 70, ¶ 7.58.01.
[67] *See generally* R. Docs 1-2 at p. 33– 37, at ¶¶ 127–143; *see also* R. Doc. 17.
[68] Coverage under the "Interruption by Communicable Disease" provision of the Special Coverage section of the policy is addressed below in Section II of this Order.
[69] R. Doc. 6-2 at p. 12.

commercial property insurance policy."[70] Defendants argue Plaintiff's claims fail because Plaintiff has not "plausibly alleged any tangible, demonstrable, physical alteration of property caused by the Coronavirus."[71]

In the state court petition, Plaintiff asserts the phrase "direct physical loss of or damage to" property is "susceptible to more than one reasonable interpretation" because it is undefined by the Policy, and, as a result, "its ambiguity must be construed against its drafters."[72] Plaintiff alleges in the state court petition, and reiterates the contention in its opposition to the motion to dismiss, that the Coronavirus is statistically certain to be present at its facilities and that the presence of the Coronavirus on property at its facilities "causes a tangible alteration to that property."[73] Plaintiff further argues Coronavirus causes a tangible alteration to property and renders it "unsafe, unfit, and uninhabitable for ordinary functional use."[74] Plaintiff argues the Policy does not contain a requirement that direct physical loss of or damage to property must involve a physical alteration of property, structural damage to property, or a total dispossession of property.[75] Plaintiff argues it suffered a loss in that it was deprived of the ability to normally operate its business as it did prior to COVID-19, and that COVID-19 caused it to be wholly or partially disposed of its physical premises, leading it to sustain massive economic losses.[76] Plaintiff emphasizes that the Policy's use of the disjunctive in the phrase "direct physical loss of *or* damage to property" necessarily implies that "'direct physical loss of' and 'damage to' are

---

[70] *Id.*
[71] *Id.* at p. 17.
[72] R. Doc. 1–2 at p. 25, ¶ 91.
[73] R. Doc. 1-2 at p. 13, ¶ 44; R. Doc. 17 at p. 19.
[74] *Id.*
[75] R. Doc. 17 at p. 21.
[76] *Id.* at pp. 21–22.

alternative concepts."[77] Plaintiff argues a physical alteration of property is not needed for there to be a "loss" under the Policy.[78] Plaintiff alternatively argues that, should the Court find Plaintiff cannot show direct physical loss of property, Plaintiff has shown damage to property because "damage refers to more than just tangible damage and encompasses harm that reduces the usefulness of property."[79]

The phrase "physical loss of or damage to property" is not ambiguous.[80] The Fifth Circuit has adhered to a narrow definition of the phrase "physical loss of or damage to property" in commercial insurance policies. In *Trinity Industries, Inc. v. Insurance Company of North America*, the Fifth Circuit, applying Louisiana law to interpret an insurance policy, held that "the language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper."[81] Similarly, in *Hartford Insurance Company of Midwest v. Mississippi Valley Gas Company*, the Fifth Circuit held that "absent some physical manifestation of loss or damage to" covered property, the insurance policies in question did not provide coverage.[82] The Fifth Circuit, stating that insurance coverage is generally "triggered by some threshold concept of physical loss or damage to the covered property," explained as follows:

> The requirement that the loss be "physical," given the ordinary definition of that term is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property

---

[77] *Id.* at p. 22 (emphasis added).
[78] *Id.* at p. 25.
[79] *Id.* at p. 33.
[80] *Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("This court finds no ambiguity in the requirement that the premises suffer a physical loss or damage.")
[81] 916 F.2d 267, 270–71 (5th Cir. 1990).
[82] 181 F. App'x 465, 470 (5th Cir. 2006).

insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.[83]

Finally, in *Dickie Brennan & Company, Inc. v. Lexington Insurance Co*mpany, the Fifth Circuit held that insurance policies covering "direct physical loss of or damage to property" do not cover business interruption losses arising from civil authority orders mandating evacuating due to an approaching hurricane unless there is proof of physical damage to property.[84]

Courts within the Fifth Circuit have applied this narrow definition of "physical loss of or damage to" property in commercial insurance disputes involving business losses attributable to the Coronavirus pandemic.[85] Louisiana state courts, and federal courts applying Louisiana law, have held the phrase "physical loss of or damage to" property does not encompass coverage based on the presence of the Coronavirus inside the premises of a business, and does not encompass economic losses or loss of normal use of property resulting from government-mandated business closures issued in response to the Coronavirus pandemic.

For example, in *Q Clothier New Orleans LLC v. Twin City Fire Insurance*, after Louisiana Governor John Bel Edwards and New Orleans Mayor Latoya Cantrell issued mandatory orders locking down nonessential businesses in response to the Coronavirus

---

[83] *Id.*

[84] 636 F.3d 683, 686-87 (5th Cir. 2011).

[85] *See, e.g.*, *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 21-858, 2021 WL 5415846, at *7 (E.D. La. Nov. 19, 2021) ("Numerous district courts have likewise read this requirement for tangible damages to apply in the context of COVID-19 closure orders."); *Pierre v. Transp. Ins. Co.*, No. 20-1660, 2021 WL 2754651, at *1 (W.D. La. July 1, 2021) ("[T]here is a universe of Louisiana jurisprudence concerning pandemic-related business interruption claims wherein the courts have held that COVID-19 pandemic does not cause direct physical loss of or damage to property."); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins.* Co., No. 21-317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("[E]very district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement.")

pandemic, the plaintiff, Q Clothier, submitted a claim to its insurer, Twin City, for the losses incurred by its mandatory closure.[86] Twin City denied the claim, and Q Clothier thereafter filed suit in federal court, alleging entitlement to coverage under the policy for losses from business interruption, extra expenses, action of civil authority, limitations on ingress and egress, and expenses to reduce loss.[87] The policy at issue provided that Twin City "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss," and the policy defined Covered Cause of Loss as risks of direct physical loss, unless otherwise excluded or limited.[88] Twin City filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and the court granted the motion.[89] The court noted that "Louisiana jurisprudence indicates that lost profits from government-mandated business closures are not covered without evidence of physical property damage."[90] The court cited to two recent decisions by Louisiana state courts—*Nite, Nite LLC v. Certain Underwriters at Lloyd's London*[91] and *Cajun Conti LLC, et al. v. Certain Underwriters at Lloyd's London*[92]—which held that lost profits sustained by businesses as a result of the government's stay-at-home orders aimed at mitigating the spread of the Coronavirus "do not amount to 'direct physical loss or damages' because they are purely economic in nature."[93]

In light of the policy requirement that there be a "direct physical loss or physical damage to property," Q Clothier argued the stay-at-home order caused damage to its

---

[86] 535 F. Supp. 3d 574, 577 (E.D. La. 2021).
[87] *Id.* at 577–78.
[88] *Id.* at 578.
[89] *Id.*
[90] *Id.* at 582.
[91] No. 698068 (La. Dist. Ct. Feb. 9, 2021) (unpublished decision).
[92] No. 2020-02558 (La. Dist. Ct. Judgment of Feb. 10, 2021).
[93] *Q Clothier New Orleans LLC*, 535 F. Supp. 3d at 582.

property because the property could not be used for its intended and normal uses.[94] The court rejected Q Clothier's argument, stating that its damages "merely reflect economic losses stemming from the government's order prohibiting access to its stores" and that "[a]bsent evidence that its property sustained physical and demonstrable alteration, Q Clothier's damages do not meet the Fifth Circuit's definition of covered physical loss or damage"[95]

Finally, the court rejected Q Clothier's invitation to adopt a broader interpretation of direct physical loss based on in *In re Chinese Drywall*, concluding that

> the threat of COVID temporarily shuttering businesses cannot be likened to toxic contamination rendering a home inhabitable. Just as the *Nite Nite* court noted, "COVID damages people not property." . . . COVID did not condemn plaintiff's property as unusable in the same regard as *In re Chinese Drywall* because effective health measures such as social distancing, capacity limitations, curbside pickup alternatives, and mask wearing allow for businesses to safely continue operation. Therefore, because it cannot satisfy the requisite showing of direct physical loss, Q Clothier is not entitled to coverage under the Policy's business income, extra expense, civil authority and limited virus provisions.[96]

Similarly, in *Muriel's New Orleans, LLC v. State Farm Fire & Casualty Company* the policyholder alleged it entered into an "all-risk" insurance contract providing property, business personal property, business income, extra expense, and additional coverages for the insured premises.[97] The policyholder alleged it sustained losses of income and lost the use of its physical property as a result of closure orders issued by Louisiana's civil authorities in response to the COVID-19 pandemic.[98] The policyholder further alleged that the loss of use of property is damage triggering coverage for "physical

---

[94] *Id.* at 583.
[95] *Id.*
[96] *Id.*
[97] 535 F. Supp. 3d 556, 558 (E.D. La. 2021).
[98] *Id.* at 558–59.

damage" under the all-risk policy, and that its losses were covered by the Civil Authority Provision of the policy.[99] The policyholder filed a claim for coverage, but the insurer denied the claim.[100] The policyholder thereafter filed suit against its insurer, asserting claims for breach of contract and declaratory judgment.[101] The insurer filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[102] In ruling on the insurer's motion to dismiss, the court, noting the policyholder's failure to allege any physical loss that manifested as a demonstrable physical alteration of the premieres, found that the policyholder did not "sufficiently allege direct physical loss to the covered property."[103]

In *Coleman E. Adler & Sons, LLC v. Axis Surplus Insurance Company*—another lawsuit involving a business's attempt to recover COVID-19 related losses under a commercial property insurance policy covering "direct physical loss of or damage to" covered property—the court granted the insurer's motion to dismiss, finding the plaintiffs could not meet the Fifth Circuit's definition of physical loss or damage because the plaintiffs had not shown their property suffered from physical and demonstrable alteration as a result of COVID-19.[104] The court in *Coleman E. Adler* reached this conclusion despite the plaintiffs' claim that they "suffered direct physical loss of and/or damage to their properties from the presence of any coronavirus particles and the presence of people infected with or carrying coronavirus particles, which created a

---

[99] *Id.*
[100] *Id.*
[101] *Id.* at 566.
[102] *Id.*
[103] *Id.* at 567, 569. The court in *Muriel's* distinguished *Studio 417, Inc. v. The Cincinnati Insurance Company*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), based on the language of the policy and the allegations of the complaint. *Muriel's*, 535 F. Supp. 3d at 567.
[104] *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. CV 21-648, 2021 WL 2476867, at *2 (E.D. La. June 17, 2021) (citing *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574 (E.D. La. 2021)).

dangerous condition and prevented the use of the properties."[105] As in *Q Clothier*, the court stated the presence of COVID-19 on the insured premises did not constitute direct physical loss.[106]

In a similar case, *Ford of Slidell, LLC v. Starr Surplus Lines Insurance Company*, the plaintiffs were Louisiana-based car dealerships which alleged they entered into an all-risk commercial insurance policy with the defendant, Starr.[107] The car dealerships alleged that, as a result of the Coronavirus pandemic and governmental orders, they suffered business interruption losses and extra expenses, and filed a claim with Starr for coverage under the policy.[108] After Starr denied coverage, the car dealerships filed suit, claiming the denial of coverage constituted breach of contract and breach of the insurer's statutory duty of good faith and fair dealing, and seeking a declaratory judgment as to the parties' rights and obligations under the policy.[109] Starr filed a motion to dismiss, arguing the car dealerships' claims should be dismissed for, *inter alia*, the car dealerships' failure to allege "direct physical loss of or damage to" property as required for coverage under the policy.[110] Starr argued direct physical loss or damage requires a "distinct, demonstrable, physical alteration of the property" or "any actual physical change or injury to the property."[111] In opposition, the car dealerships argued they alleged direct physical loss or damage because the governmental orders caused property loss by restricting the services they could provide and limiting access to their locations, and because the presence of Coronavirus on and within the insured premises caused property damage by making the

---

[105] *Id.* at *2.
[106] *Q Clothier New Orleans LLC v. Twin City Fire Insurance*, 535 F. Supp. 3d 574, 583 (E.D. La. 2021).
[107] No. CV 21-858, 2021 WL 5415846, at *1 (E.D. La. Nov. 19, 2021).
[108] *Id.* at *2.
[109] *Id.*
[110] *Id.* at *6.
[111] *Id.*

premises "uninhabitable and unusable" until cleaned.[112] The court disagreed with the car dealerships, explaining "Fifth Circuit precedent is clear that tangible damages are necessary to satisfy the physical loss or damage language of a policy, even when a policy provides coverage in cases of physical loss *or* damage."[113] The court expressly rejected the car dealerships' attempt to argue they suffered direct physical loss or damage through their allegation of actual presence of the coronavirus on and within the insured premises, finding persuasive similar cases from other sections of this court which deemed such allegations "insufficient to allege physical loss or damage."[114]

Several other federal courts applying Louisiana law have concluded that COVID-19 and related shutdowns do not cause "direct physical loss of or damage to" property.[115] The Court finds the reasoning employed in those cases to be persuasive in this case.[116] The

---

[112] *Id.*

[113] *Id.* at *7 (emphasis in original).

[114] *Id.* at *8 (citing *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. CV 21-648, 2021 WL 2476867 (E.D. La. June 17, 2021) and *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574 (E.D. La. 2021)).

[115] *Peony Fine Clothing, LLC v. State Farm Fire and Casualty Company*, No. CV 21-1650-WBV-MBN, 2022 WL 742439 (E.D. La. Mar. 11, 2022); *Southern Orthopaedic Specialists LLC v. State Farm Fire and Cas. Co.*, Civ. A. No. 21-0861- WBV-DID, 2022 WL 219056 (E.D. La. Jan. 25, 2022); *Grand Isle Partners, LLC v. Assurant*, No. CV 21-505, 2022 WL 179467 (E.D. La. Jan. 20, 2022); *Dickie Brennan & Co., LLC v. Zurich Am. Ins. Co.*, No. CV 21-434, 2021 WL 6061917 (E.D. La. Dec. 20, 2021); *Pierre v. Transp. Ins. Co.*, No. 20-1660, 2021 WL 2754651 (W.D. La. July 1, 2021); *Laser & Surgery Ctr. of Acadiana LLC v. Ohio Cas. Ins. Co.*, Civ. A. No. 21- 01236, 2021 WL 2702123 (W.D. La. June 14, 2021), *report and recommendation adopted*, 2021 WL 2697990 (W.D. La. June 30, 2021); *Padgett v. Transp. Ins. Co.*, Civ. A. No. 6:21-CV-01086, 2021 WL 2559597 (W.D. La. June 1, 2021), *report and recommendation adopted*, 2021 WL 2555377 (W.D. La. June 22, 2021); *Lafayette Bone & Joint Clinic, Inc. v. Trans. Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466 (W.D. La. May 3, 2021).

[116] Plaintiff attempts to distinguish several of the cases relied on by this Court on the basis that the policies in some of those cases did not contain an identical requirement for "direct physical loss of or damage to" property and, instead, required "loss or damage to" property. R. Doc. 17 at p. 16. Previous cases have treated this as a distinction without a difference, and this Court agrees with this approach. In *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. CV 21-648, 2021 WL 2476867, at *1 (E.D. La. June 17, 2021), the policy provided coverage for "direct physical loss of or damage to Covered Property," yet the court relied on *Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, 535 F. Supp. 3d 556, 566 (E.D. La. 2021). The policy in *Muriel's* provided coverage for "direct physical loss to Covered Property." Despite the difference in the language of the coverage trigger in the policies at issue in *Muriel's* and *Coleman E. Adler*, the courts reached the same conclusion—that coverage did not exist under the policy because the plaintiff failed to show its property suffered some physical and demonstrable alteration. *See Muriel's New Orleans, LLC*, 535 F. Supp. 3d at 566; *see also Coleman E. Adler & Sons, LLC*, 2021 WL 2476867, at *2.

Louisiana Supreme Court, however, has not addressed the question now before this Court. In addition, the Court is not aware of any decision from the Fifth Circuit addressing whether, under Louisiana law, the negative impacts on business operations resulting from COVID-19 and related governmental orders constitute "direct physical loss of or damage to property" under a commercial all-risk insurance policy. The Fifth Circuit, has, however, recently decided two COVID-19-related commercial insurance coverage disputes involving Texas law—*Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.* and *Aggie Investments, L.L.C. v. Continental Casualty Company*.[117] Like the Policy in this case, the policies in *Terry Black's Barbecue* and *Aggie Investments* required "direct physical loss of or damage to" property trigger coverage.[118] In *Terry Black's Barbecue,* the Fifth Circuit, interpreting Texas law, concluded that "direct physical loss" demands allegations of "tangible alteration or deprivation of" property, and that "[n]othing physical or tangible happened to [policyholder's] restaurants at all," despite the loss of some use of the property.[119] The Fifth Circuit in *Terry Black's Barbecue* further rejected the policyholder's arguments regarding the loss of use of its property, explaining that the provision in question required "loss of property, not the loss of *use* of property," and that "'[p]hysical loss of property' is not synonymous with loss of use of property for its intended purposes.'"[120] In *Aggie Investments*, the Fifth Circuit affirmed the district court's dismissal of the policyholder's claims, finding that "direct physical loss of or

---

[117] *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022) and *Aggie Investments, L.L.C. v. Continental Casualty Company*, No. 21-40382, 2022 WL 257439 (5th Cir. Jan. 26, 2022).

[118] The Fifth Circuit has noted there is no "pertinent difference between Texas law and Louisiana law with respect to interpreting insurance policies." *Aggreko, L.L.C. v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019).

[119] *Terry Black's Barbecue, L.L.C.*, 22 F.4th at 456–57.

[120] *Id.* at 458 (emphasis in original).

damage to" property means a tangible alteration or deprivation of property.[121] The Fifth Circuit explained that the policyholder had not alleged a covered loss because it complained only of loss of revenue due to the closing of its shop when Texas civil authorities placed limitations on the operations of nonessential businesses, noting that the policyholder "had ownership of and access to its property even if it could not open its shop for normal business operations."[122] The Fifth Circuit further found that "[p]hysical loss of property cannot reasonably be interpreted to mean loss of use."[123]

The Court concludes the Coronavirus pandemic and related governmental orders causing economic losses and loss of normal use of property, and the presence of the Coronavirus within the insured premises, are not "direct physical loss of or damage to property" sufficient to trigger coverage under the Policy. In short, Plaintiff failed to show its alleged losses from COVID-19 and related governmental orders were caused by direct physical loss of or damage to the covered property because Plaintiff has failed to connect its alleged losses to any tangible, demonstrable alteration or change to its property. The presence of the Coronavirus within Plaintiff's premises does not constitute physical loss or damage because the virus does not threaten the structures covered by the Policy and can be removed from surfaces with cleaning and disinfectants; "COVID-19 harms people, not property."[124] Moreover, Plaintiff's alleged loss of normal use of its property as a result of governmental orders and other mitigation measures does not constitute "direct

---

[121] *Aggie Investments, L.L.C.* 2022 WL 257439 at *1.
[122] *Id.* at *2.
[123] *Id.*
[124] *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 21-858, 2021 WL 5415846, at *8 (E.D. La. Nov. 19, 2021) (quoting *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. CV 21-648, 2021 WL 2476867, at *2 (E.D. La. June 17, 2021)).

physical loss of or damage to" property because, as held by the Fifth Circuit, "physical loss of property is not synonymous with loss of use of property for its intended purposes."[125]

Finally, Plaintiff urges the Court to adopt "a more liberal definition of direct physical loss or damage in keeping with *Chinese Drywall*."[126] In *Ford of Slidell, LLC*, a separate section of this court found the plaintiffs' reliance on *In re Chinese Manufactured Drywall Products Liability Litigation* to argue that the presence of a potentially injurious material in a building may constitute a covered physical loss, "unavailing in the context of COVID-19."[127] This Court agrees. In *In re Chinese Manufactured Drywall Products Liability Litigation*, Chinese-manufactured drywall emitted sulfur gases which caused corrosion and destroyed copper and silver elements in the homes, "often to the point of causing total or partial failure in electrical wiring and devices installed in the homes."[128] The *Chinese Manufactured Drywall* court concluded "the Chinese-manufactured drywall renders the Plaintiffs' homes useless and/or uninhabitable due to the damage to the electrical wiring, appliances, and devices, as well as the ever-present sulfur gases"[129] and "the alleged damages to Plaintiffs' homes caused by Chinese drywall constitute a covered physical loss for purposes of their homeowners' policies."[130]

---

[125] *Terry Black's Barbecue, L.L.C. v. State Automobile Mutual Insurance Company*, 22 F.4th 450, 458 (5th Cir. 2022).

[126] R. Doc. 17 at p. 14.

[127] *Ford of Slidell, LLC v. Starr Surplus Lines Insurance Company*, No. CV 21-858, 2021 WL 5415846, at *8 (E.D. La. Nov. 19, 2021). *See also S. Orthopaedic Specialists LLC v. State Farm Fire & Cas. Co.,* No. CV 21-0861-WBV-DMD, 2022 WL 219056, at *7 (E.D. La. Jan. 25, 2022); *Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021); *Muriel's New Orleans, LLC v. State Farm Fire & Cas. Co.*, 535 F. Supp. 3d 556, 568–69 (E.D. La. 2021); *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 583 (E.D. La. 2021).

[128] *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F. Supp. 2d 822, 831 (E.D. La. 2010).

[129] *Id.* at 832.

[130] *Id.* at 833.

In this case, Plaintiff alleges the presence of the Coronavirus on and within the insured premises rendered its facilities "uninhabitable, unsafe, and unfit for their *intended* uses — just as if asbestos, ammonia, fumes, or a salmonella outbreak was in the air or on surfaces of the premises."[131] Plaintiff has not alleged, however, that COVID-19 rendered the insured premises *completely* unusable and uninhabitable—indeed, Plaintiff could not so allege, because Plaintiff was deemed an essential business by Governor Edwards and was never forced to close its facilities as a result of COVID-19 or governmental orders.[132] Plaintiff has failed, moreover, to allege any facts to support the notion that the presence of COVID-19 rendered the premises useless or uninhabitable, as the virus can be eliminated through cleaning and decontamination,[133] and "coronaviruses on surfaces and objects naturally die within hours to days."[134] In addition, "effective health measures such as social distancing, capacity limitations, . . . and mask wearing allow for businesses to safely continue operation,"[135] despite the potential or actual presence of the coronavirus within the premises. Furthermore, unlike the Coronavirus,

---

[131] R. Doc. 1-2 at p. 5, ¶ 10 (emphasis added). In the petition, Plaintiff avers that "[a] Louisiana federal court in In re Chinese Manufactured Drywall Products Liability Litigation, concluded that the Chinese drywall caused a "distinct, demonstrable, physical alteration' of the insureds' homes by corroding the silver and copper elements in the homes, as well as by emitting odorous gases." *Id.* at p. 22, ¶ 89.

[132] Louisiana Executive Order No. 33 JBE 2020, *Additional Measures for COVID-19: STAY AT HOME* (March 22, 2020) https://gov.louisiana.gov/index.cfm/search?q=stay+at+home.

[133] *See Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 21-858, 2021 WL 5415846, at *8 (E.D. La. Nov. 19, 2021); *Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *3 n.2 (W.D. La. May 3, 2021) (distinguishing *In re Chinese Manufactured Drywall* because, inter alia, "the virus does not threaten structures and can be removed with standard cleaning practices") (citing *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins.* Co., 514 F. Supp. 3d 896, 907 (W.D. Tex. 2021), *aff'd sub nom. Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022)); *see also Peony Fine Clothing, LLC v. State Farm Fire snd Casualty Company*, No. CV 21-1650-WBV-MBN, 2022 WL 742439, at *5 (E.D. La. Mar. 11, 2022) ("The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant.")

[134] Centers for Disease Control and Prevention, *Guidance for Cleaning and Disinfecting Public Spaces, Workplaces, Businesses, Schools, and Homes* (2020). https://www.cdc.gov/coronavirus/2019-ncov/community/pdf/Reopening_America_Guidance.pdf.

[135] *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 583 (E.D. La. 2021).

the drywall in the *Chinese Drywall* case caused a demonstrable physical alteration of property, namely corrosion. As previously discussed, Plaintiff has not alleged it suffered a tangible physical alteration to its property as a result of the Coronavirus. Finally, the homeowner's insurance policies at issue in *Chinese Drywall* defined property damage to include loss of use of tangible property, whereas the commercial property insurance Policy at issue in this case does not.

The Court is not persuaded to reach a different result on the basis that the policies in some of the above-cited cases contained express virus exclusions whereas the Policy in this case does not. "Under Louisiana law, the insured must prove that the claim asserted is covered by his policy," and only after the insured has proven coverage does the burden shift to the insurer to "demonstrat[e] that the damage at issue is excluded from coverage"[136] In this case, the Plaintiff has failed to prove coverage, therefore, the Court does not reach the issue of policy exclusions, including the absence of a virus exclusion. In *Terry Black's Barbecue*, the district court concluded there was no coverage under the policy because there was no physical alteration to the property, and, based on its conclusion that there was no coverage, the district court declined to address whether a virus exclusion applied.[137] On appeal, the Fifth Circuit stated that "[w]ithout coverage, we need not address whether any policy exclusions also apply."[138] The Louisiana state courts in *Nite, Nite* and *Cajun Conti* held that lost revenues incurred from non-essential business closures as a result of governmental orders to mitigate the spread of Coronavirus do not

---

[136] *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009) (citing *Jones v. Est. of Santiago*, 2003-1424 (La. 4/14/04), 870 So. 2d 1002, 1010).

[137] *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 909 n.11 (W.D. Tex. 2021), *aff'd sub nom. Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022).

[138] *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022).

amount to direct physical loss or damages, and the "disputed policy in *Nite, Nite* and

*Cajun Conti* did not contain a virus exclusion clause."[139]

## II.   Plaintiff has no coverage under the Interruption by Communicable Disease provision of the policy because Plaintiff was not prohibited from accessing any part of its facilities.

As previously mentioned, each of the coverages identified by Plaintiff in its petition

and its opposition can be triggered only by "direct physical loss of or damage to" property,

except for coverage for interruption by communicable disease. Having concluded that

there was no triggering "physical loss or damage" in this case, the remaining question

before the Court is whether the "Interruption by Communicable Disease" ("ICD")

provision of the Policy provides coverage for Plaintiff's losses in this case. The ICD

provision is found in the Special Coverages section of the policy, and provides that the

insurer will pay for the

> actual Gross Earnings loss sustained by the Insured, as provided by this
> Policy, resulting from the necessary **Suspension** of the Insured's business
> activities at an Insurance Location if the **Suspension** is caused by order of
> an authorized governmental agency enforcing any law or ordinance
> regulating communicable diseases and that such portions of the location are
> declared uninhabitable due to the threat of the spread of communicable
> disease, prohibiting access to those portions of the **Location**.[140]

Defendants argue ICD coverage does not apply in this case because orders issued

by Governor Edwards and the Louisiana Department of Health "did not prohibit access

to any Slidell Memorial insured location or portions thereof."[141] Defendants argue courts

applying Louisiana law interpret the word "prohibit," when used in an insurance policy,

to mean that absolutely nobody can enter the property, and that Plaintiff fails to allege

---

[139] *Q Clothier New Orleans LLC v. Twin City Fire Ins. Co.*, 535 F. Supp. 3d 574, 582 (E.D. La. 2021).
[140] R. Doc. 6-3 at p. 49, ¶ 5.02.35 (emphasis in original).
[141] R. Doc. 6-2 at p. 31.

any government orders prevented all persons from entering Plaintiff's property or any portion of it.[142] Defendants further argue the government orders referenced in Plaintiff's petition specifically acknowledge that certain medical procedures could still be performed on Plaintiff's premises, which necessarily implies that patients and employees would be permitted to, and not prohibited from, entering Plaintiff's premises.[143] Defendants emphasize that orders issued by the Governor and the Louisiana Department of Health declared the continued operation of Plaintiff's business to be an "essential activity."[144]

Plaintiff argues in its opposition that the Policy expressly acknowledges that a communicable disease can cause loss or damage because the ICD provision of the Policy states that "[ICD] Coverage will not apply to loss or damage that is payable under any other provision in this Policy."[145] Plaintiff argues the presence of this exclusionary clause demonstrates that "the presence of a communicable disease can cause physical loss or damage" because, if it were not so, then the above-cited exclusionary clause would be superfluous and meaningless.[146] Plaintiff further argues that because loss or damage caused by communicable disease is a covered cause of loss, such loss or damage caused by communicable disease necessarily triggers the other relevant coverages contained in the Policy.[147]

At the outset, the Court rejects as untenable Plaintiff's argument that the ICD coverage provision modifies the requirement for "direct physical loss of or damage" to property in every provision of the Policy. Were it so, the entire ICD coverage provision

---

[142] *Id.*
[143] *Id.*
[144] *Id.* at p. 32.
[145] R. Doc. 6-3 at p. 49, ¶ 5.02.35.
[146] R. Doc. 17 at pp. 7–8.
[147] *Id.* at p. 8.

would be superfluous and meaningless because the loss resulting from interruption by communicable disease would be covered under other provisions of the policy. Further, Plaintiff's argument that the exclusionary clause in the ICD provision[148] amounts to an acknowledgement that "communicable disease can cause loss or damage" because any other interpretation of the clause would render it superfluous is incorrect for two reasons. First, the ICD coverage provision expressly states that it applies to "loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insurance Location *if the Suspension is caused by order of an authorized governmental agency* regulating communicable diseases."[149] Thus, the ICD coverage provision of the policy makes clear the covered loss must be caused by the governmental order, not the underlying communicable disease. Second, the clause Plaintiff cites as creating an implication that communicable disease constitutes loss under the Policy is an exclusionary clause, and Plaintiff cannot rely on an exclusion within a special coverage provision to create coverage that does not otherwise exist under the other provisions of the Policy.[150] As recognized by the Fifth Circuit, "'superfluous exceptions are commonplace' in insurance contracts and 'have the effect merely of making assurance doubly sure.'"[151] Thus, the fact that this specific exclusionary clause is inserted in the ICD coverage provision does not create an inference that loss or damage caused by communicable disease—which is not covered under any other provision of the Policy

---

[148] This clause states as follows: "This Coverage [Interruption by Communicable Disease] will not apply to loss or damage that is payable under any other provision in this Policy." R. Doc. 6-3 at p. 49, ¶ 5.02.35.

[149] *Id.*

[150] "An exception to an exclusion cannot create coverage that does not otherwise exist." *Holden v. U.S. United Ocean Servs., L.L.C.*, 582 F. App'x 271, 273 (5th Cir. 2014). *See also Carrier v. Reliance Ins. Co.*, 1999-2573 (La. 4/11/00), 759 So. 2d 37, 40. Exceptions operate to limit the application of policy exclusion. If exceptions to exclusions do not create coverage, *a fortiori* neither do exclusions.

[151] *RLI Ins. Co. v. Gonzalez*, 411 F. App'x 696, 698 (5th Cir. 2011) (quoting *Williamson v. J.C. Penney Ins. Co.*, 226 F.3d 408, 411 (5th Cir.2000)).

because it does not involve physical loss or damage—triggers the other relevant coverages contained in the Policy.[152]

Turning now to the question of whether Plaintiff is entitled to coverage under the ICD coverage provision, the Court answers in the negative. Plaintiff does not allege its premises were declared uninhabitable by governmental orders, or that its employees or patients were prohibited by government order from entering the premises or any portion thereof. In the petition, Plaintiff cites a number of gubernatorial orders and notices from the Louisiana Department of Health. The only order or notice that is potentially relevant to Plaintiff's claim for ICD coverage is Louisiana Department of Health's Notice # 2020-COVID19-ALL-006, dated March 18, 2020, which provided that

> any and all medical and surgical procedures that, in the medical opinion and judgment of the physician or other appropriate healthcare professional acting within the scope of his/her license, can be safely postponed for a period of thirty (30) days, SHALL be postponed for a period of (30) days. This thirty (30) day period shall run from March 19, 2020, through April 21, 2020 unless otherwise extended in writing by the Department. [153]

In the petition, Plaintiff acknowledges it ceased all non-emergent procedures throughout its healthcare system on March 16, 2020, and resumed time-sensitive, elective medical procedures on April 27, 2020.[154] While Plaintiff, in the petition, alleges in conclusory fashion that orders from the Louisiana Department of Health and Governor Edwards "prohibited access to SMH facilities,"[155] Plaintiff has alleged no facts showing that it was ever prohibited access to its facilities by a government order. To be sure, Governor Edward's original stay-home order—33 JBE 2020—directed individuals within the State

---

[152] *See id.*

[153] Louisiana Department of Health, *Healthcare Facility Notice: Notice #2020-COVID19-ALL-006*, March 18, 2020.

[154] R. Doc. 1-2 at p. 5, ¶ 11; *see also id.* at p. 20, ¶ 70.

[155] R. Doc 1-2 at p. 34, ¶ 129.

of Louisiana "to stay home unless performing an essential activity" and defined essential activity to include "[o]btaining non-elective medical care and treatment and other similar vital services for an individual or a family member of an individual."[156] Plaintiff's business, a healthcare system providing, among other things, "a 223-bed acute care hospital and emergency room, a Level III neonatal intensive care unit, a heart center, [and] a regional cancer center," clearly fell within the definition of an essential activity as provided under 33 JBE 2020.

As an essential business which at all times remained able to perform emergency medical services, and elective procedures which could not safely be postponed, the Court concludes Plaintiff is not entitled to recovery under the ICD provision of the Policy. Importantly, "[t]he Fifth Circuit has held that the critical word is 'prohibit,' which means to 'to forbid access by authority or command.'"[157] To recover under a provision in an insurance policy providing coverage when, among other things, a civil authority or governmental agency prohibits access to the insured premises, a "complete prohibition of access" is required.[158] In this case, even the most stringent governmental orders did not completely forbid access to Plaintiff's premises; rather, the orders temporarily restricted Plaintiff's ability to use its facilities to perform *only* those elective procedures that could be safely postponed. Under these orders, Plaintiff would have been permitted to use facilities normally used for elective procedures to conduct emergency procedures and elective procedures that could not be safely postponed.

---

[156] Louisiana Executive Order No. 33 JBE 2020, *Additional Measures for COVID-19: STAY AT HOME* (March 22, 2020) https://gov.louisiana.gov/index.cfm/search?q=stay+at+home.

[157] *Lafayette Bone & Joint Clinic, Inc. v. Transportation Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *4 (W.D. La. May 3, 2021) (quoting *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248, 2003 WL 21145725 (5th Cir. 2003)).

[158] *See id.* (citing *Commstop v. Travelers Indem. Co. Conn.*, 2012 WL 1883461, at *10 (W.D. La. May 17, 2012)).

Courts within this district have reached identical conclusions with respect to the word "prohibit" in analyzing claims for COVID-19 business interruption losses under civil authority endorsements in commercial insurance policies.[159] Similar to the ICD coverage provision at issue in this case, civil authority endorsements require, among other things, 'action of civil authority that prohibits access to the described premises.'[160] In *Padgett v. Transportation Insurance Company*, the Western District of Louisiana court noted that "[o]ther district courts in this circuit have refused to apply civil authority endorsements in nearly identical cases, because Governor Edward's stay-home orders did not prohibit the plaintiffs from accessing their premises."[161] The plaintiff in *Padgett*, an obstetrician-gynecologist performing essential services, failed to show he was prohibited from accessing his premises, and, in fact, alleged in his petition he was "able to perform certain emergency procedures."[162] In *Ford of Slidell*, the court likewise denied coverage under a civil authority endorsement requiring, in pertinent part, that "access to such described premises is specifically prohibited by order of civil or military authority."[163] The court held the civil authority endorsement did not apply to the plaintiffs' claims because, *inter alia*,

---

[159] *See, e.g., Pierre v. Transportation Ins. Co.,* No. 6:20-CV-01660, 2021 WL 1709380, at *4 (W.D. La. Apr. 29, 2021).

[160] *See, e.g., Padgett v. Transportation Ins. Co.,* No. 6:21-CV-01086, 2021 WL 2559597, at *4 (W.D. La. June 1, 2021), *report and recommendation adopted,* No. 6:21-CV-01086, 2021 WL 2555377 (W.D. La. June 22, 2021). *See also Dickie Brennan & Co. v. Lexington Ins. Co.,* 636 F.3d 683, 685 (5th Cir. 2011) stating that, under Louisiana law,

> to prove coverage under the civil authority provision, the insured must establish a loss of business income: (1) caused by an action of civil authority; (2) the action of civil authority must prohibit access to the described premises of the insured; (3) the action of civil authority prohibiting access to the described premises must be caused by direct physical loss of or damage to property other than at the described premises; and (4) the loss or damage to property other than the described premises must be caused by or result from a covered cause of loss as set forth in the policy.

[161] *Padgett*, 2021 WL 2559597 at *4.

[162] *Id.*

[163] *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 21-858, 2021 WL 5415846, at *9 (E.D. La. Nov. 19, 2021).

the plaintiffs "were never prohibited from accessing the insured premises as they were deemed essential businesses exempt from COVID-related closures."[164]

Two out-of-circuit COVID-19 pandemic-related cases, involving health care providers seeking to recover against their insurer under interruption by communicable disease provisions, similar to the one in this case, support the Court's conclusion that Plaintiff was not "prohibited" from accessing its facilities. In *Palomar Health v. Am. Guarantee & Liab. Ins. Co.*, the plaintiff, a California Public Healthcare District, sued its commercial property insurer for breach of contract, alleging the insurer failed to pay claims covered under several portions of the policy, including the interruption by communicable disease provision.[165] The relevant COVID-19-related governmental orders in that case included county orders requiring hospitals and healthcare providers such as the plaintiff to delay "non-emergent or elective surgeries when feasible as well as barring all 'non-essential personnel' from hospitals or long-term care facilities."[166] The interruption by communicable disease provision in the policy in that case provided for coverage when a government order declared portions of the location "uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the location."[167] The court rejected the plaintiff's claim for coverage under the interruption by communicable disease provision because the plaintiff did not assert it was "prohibited by government order from entering [its] facility."[168]

---

[164] *Id.*
[165] *Palomar Health v. Am. Guarantee & Liab. Ins. Co.*, No. 321CV00490BENBGS, 2021 WL 4035005, at *1, *8 (S.D. Cal. Sept. 3, 2021).
[166] *Id.* at *1.
[167] *Id.* at *9.
[168] *Id.*

In a similar case, *Northwell Health, Inc. v. Lexington Ins. Co.*, the Southern District of New York found that the plaintiff, a healthcare system, failed to establish that interruption by communicable disease coverage extended to its claims.[169] The governmental orders in that case directed hospitals and health centers to cancel or postpone elective procedures.[170] The court rejected the plaintiff's interruption by communicable disease coverage claim because the orders at issue did not deem the plaintiff's facilities uninhabitable, or otherwise prohibit access thereto.[171] The Court went on to reason that

> the Orders assume that patients will continue to "inhabit" hospitals, regulate the way patients can safely do so, and establish conditions under which members of the public may access hospitals and patients. The Orders do not require hospitals to close certain buildings, only to suspend elective procedures; if a hospital wanted to use facilities ordinarily used for elective procedures to conduct emergency ones, nothing in the Orders forbids this. While the Orders certainly restrict access to hospitals, they fall far short of "prohibiting" access.[172]

The reasoning employed by the *Northwell Health* court is persuasive in this case.

Accordingly, the Court finds Plaintiff is not entitled to coverage under the interruption by communicable disease provision, and that Defendants did not breach any contract by failing to provide such coverage to Plaintiff.

### III. **Plaintiff's claim for insurer's breach of duty of good faith and fair dealing under Louisiana Revised Statutes sections 22:1973 and 22:1892 necessarily fails because its claims for coverage have failed.**

"In order to recover under La. R.S. 22:1973 and La. R.S. 22:1892, a plaintiff must first have a valid, underlying, substantive claim upon which insurance coverage is

---

[169] No. 21-cv-1104, 2021 WL 3139991, at *8 (S.D.N.Y. July 26, 2021).
[170] *Id.* at *7.
[171] *Id.* at *8.
[172] *Id.*

based."[173] The penalties provided for under §§ 22:1973 and 22:1892 do not stand alone as a basis for monetary recovery because "they do not provide a cause of action against an insurer absent a valid, underlying insurance claim."[174] The Fifth Circuit has held that "breach of contract is a condition precedent to recovery for the breach of the duty of good faith" against an insurer.[175] When the breach of insurance contract claim fails, the bad faith claims fail, too. Accordingly, Plaintiff's bad faith claims against Defendants under §§ 22:1973 and 22:1892 should be dismissed.

## IV.   Plaintiff is not granted leave to amend because any amendment would be futile.

In its opposition to the motion to dismiss, Plaintiff requests leave to amend the state court petition to "correct any perceived deficiencies," in the event the Court should find any of its allegations insufficient or lacking.[176]

It is within the district court's discretion under Rule 15 to deny leave to amend if the amendment would be futile.[177] The Fifth Circuit has held futility means "the amended complaint would fail to state a claim upon which relief could be granted."[178] To determine futility, therefore, the Fifth Circuit applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)."[179] To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim for relief that is plausible on its face.[180] A claim is facially

---

[173] *Pelle v. Munos*, 2019-0549 (La.App. 1 Cir. 2/19/20), 296 So.3d 14, 25 (*citing Clausen v. Fidelity and Deposit Co. of Maryland*, 95-0504 (La.App 1 Cir. 8/4/95), 660 So.2d 83, 85, *writ denied*, 95-2489 (La. 1/12/96), 666 So.2d 320).
[174] *Pelle*, 296 So.3d at 25.
[175] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 363 (5th Cir. 2010).
[176] R. Doc. 17 at p. 38.
[177] *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872–73 (5th Cir. 2000) (citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir.1999) and *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir.1994)).
[178] *Stripling*, 234 F.3d at 873.
[179] *Id.*
[180] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."[181] In determining whether facial plausibility is met, the court looks to the factual allegations supporting the necessary elements of the plaintiff's claim, and does not assume the truth of conclusory statements.[182] Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Rule 12(b)(6) motion.[183]

In *Terry Black's Barbecue, L.L.C. v. State Automobile Mutual Insurance Company*, the district court denied leave to amend based on futility after finding "the 'clear terms' of the policy preclude coverage of TBB's losses."[184] On appeal, the Fifth Circuit affirmed the district court's denial of leave to amend, finding that leave would be futile because "TBB's restaurants have not been tangibly altered in any way such that it would be entitled to coverage under the policy," and because the court could "perceive no set of facts in which TBB states a covered claim for its losses due to the suspension of dine-in services during the pandemic."[185]

In this case, the Court denies leave to amend because any amendment would be futile. The clear language of the Policy requires "direct physical loss of or damage to" property and the Court cannot perceive any set of facts under which Plaintiff could allege

---

[181] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly.*, 550 U.S. at 556).

[182] *Iqbal*, 556 U.S. at 679.

[183] *Id.* at 678.

[184] *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 910 (W.D. Tex. 2021), *aff'd sub nom. Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450 (5th Cir. 2022) 22 F.4th 450, 459 (5th Cir. 2022).

[185] 22 F.4th 450, 460 (5th Cir. 2022). *See also 4431, Inc. v. Cincinnati Ins. Companies*, 504 F. Supp. 3d 368, 386 (E.D. Pa. 2020) ("Here, it is clear that any amendment to the Complaint would be futile. The terms of the Policies are not in dispute, and there is nothing else Plaintiffs could allege that would bring their claimed losses within the Policies' coverage. Leave to amend is therefore denied.")

direct physical loss of or damage to property. Furthermore, there is no plausible set of facts under which Plaintiff can state a claim under the ICD provision of the Policy because, for the reasons set forth above, no governmental order completely prohibited access to Plaintiff's premises or any portion thereof.

## **CONCLUSION**

**IT IS ORDERED** that the motion to dismiss[186] filed by Defendants Zurich American Insurance Company and XL Insurance America, Inc. is **GRANTED**.

**New Orleans, Louisiana, this 23rd day of March 2022.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[186] R. Doc. 6.